Charles R. Jacob III (CJ-4143)
MILLER & WRUBEL P.C.
250 Park Avenue
New York, New York 10177
(212) 336-3500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| TERWIN ADVISORS LLC,<br><br>      Plaintiff,<br><br> -against-<br><br>DREAM HOUSE MORTGAGE<br>CORPORATION and JOHN PONTE,<br><br>      Defendants. | 07 Civ. _____ ( )<br><br><u>COMPLAINT</u> |

Plaintiff Terwin Advisors LLC ("Terwin"), by its attorneys Miller & Wrubel P.C., as and for its Complaint against defendants alleges as follows:

### ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

#### The Parties

1. Terwin is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 45 Rockefeller Plaza, Suite 420, New York, New York 10111. Terwin is engaged in the business of, <u>inter</u> <u>alia</u>, purchasing, trading and securitizing mortgages.

2. None of Terwin's members is a citizen of the State of Rhode Island.

3. On information and belief, defendant Dream House Mortgage Corporation ("Dream House") is a corporation organized under the laws of the State of

Rhode Island with its principal place of business at 385 South Main Street, Providence, Rhode Island, 02903. On further information and belief, Dream House is engaged in the business of, inter alia, originating and selling mortgages.

4. On information and belief, defendant John Ponte is a Rhode Island resident whose business address is that of Dream House, above. On further information and belief, Ponte is an officer, director and shareholder of Dream House.

### Jurisdiction and Venue

5. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a), as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

6. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claim occurred in this District, a substantial part of the property that is the subject of this action is situated in this District and Dream House is subject to personal jurisdiction in this District.

7. Dream House is subject to personal jurisdiction in this Court because, as more fully set forth below, it is registered in the State of New York as an active foreign business corporation with a designated registered agent in the State of New York for service of process, it transacted business in the State of New York and contracted to supply goods and services in the State of New York.

8. Ponte is subject to personal jurisdiction in this Court because the claims against him are closely related to the claims as to which Dream House is subject to jurisdiction in this State, as more fully set forth below, and pursuant to New York CPLR 302(a)[1] and [3] based on his own and Dream House's conduct causing injury to persons and property within New York State.

## Dream House's Breach of
## the Purchase Agreement

### A. The Purchase Agreement

9. On or about May 10, 2004, Terwin and Dream House entered into a Seller's Purchase, Warranties and Interim Servicing Agreement, as amended and supplemented from time to time (collectively the "Purchase Agreement"). The Purchase Agreement includes a written Amendment No. 1 executed on or about August 3, 2004.

10. In the Purchase Agreement, Terwin and Dream House contracted for Dream House to sell to Terwin certain Mortgage Loans (as defined in the Purchase Agreement), subject to the terms and conditions in the Purchase Agreement, and Dream House agreed to repurchase those Mortgage Loans under the circumstance referred to as "Early Payment Default" or "EPD".

### B. Consent to Jurisdiction

11. Dream House is registered with the State of New York as an active foreign business corporation with a designated registered agent in the State of New York for service of process and, as such, consented to jurisdiction in New York. Moreover, the Purchase Agreement (a) was negotiated in material part in the State of New York, (b) required performance by Dream House in the form of the delivery of documents and funds, and the benefits of mortgage servicing, to Terwin at its offices in the State of New York, and (c) chose New York law as governing law.

12. Terwin's claims against Ponte in this action are closely related to the claims as to which Dream House is subject to jurisdiction in New York State.

C.  **Dream House's Default in Its Obligation
to Repurchase Early Payment Default Loans**

13. Pursuant to § 3.05 of the Purchase Agreement, entitled "Repurchase of Mortgage Loans With Early Payment Defaults," Dream House agreed to repurchase from Terwin certain Mortgage Loans ("Early Payment Default Loans" or "EPD Loans") as to which there occurred payment defaults within three months after the Closing Date (as defined in the Purchase Agreement) for such Mortgage Loans. Section 3.05 of the Purchase Agreement provides as follows:

> If (a) a Mortgagor is thirty (30) days or more delinquent with respect to any of the first three (3) Monthly Payments due on the related Mortgage Loan immediately following the applicable Closing Date or (b) a Mortgage Loan is in bankruptcy or litigation within the first three (3) months immediately following the applicable Closing Date, the Seller [Dream House], at the Purchaser's option, shall promptly repurchase such Mortgage Loan from the Purchaser within five (5) Business Days of receipt of written notice from the Purchaser, in accordance with the procedures set forth in Section 3.03 hereof, however, any such repurchase shall be made at the Repurchase Price.

14. Thus, the Purchase Agreement expressly and unambiguously gave Terwin the right to cause Dream House to repurchase, and imposed on Dream House the obligation to repurchase, at the Repurchase Price, any Early Payment Default Loans as to which Terwin requested repurchase.

15. Certain of the Mortgage Loans that Terwin purchased from Dream House pursuant to the Purchase Agreement, which Mortgage Loans are identified on Exhibit A hereto, were Early Payment Default Loans, that is, Mortgage Loans as to which (a) a Mortgagor (as defined in the Purchase Agreement) was thirty (30) days or more delinquent with respect to any of the first three (3) Monthly Payments due on the

4

related Mortgage Loan immediately following the applicable Closing Date or (b) the Mortgage Loan was in bankruptcy or litigation within the first three (3) months immediately following the applicable Closing Date.

16. The Mortgage Loans listed on Exhibit A hereto are all Early Payment Default Loans as defined in the Purchase Agreement.

17. Commencing in or about August 2005, and continuing through May 17, 2007, Terwin gave Dream House written notice of such Early Payment Default Loans and exercised Terwin's option to require Dream House to repurchase such Early Payment Default Loans, all in accordance with the terms of the Purchase Agreement.

18. Terwin stood ready, willing and able, at all relevant times, to reconvey the Mortgage Loans on Exhibit A to Dream House.

19. Dream House did not repurchase the Early Payment Default Loans listed on Exhibit A hereto as requested by Terwin. Therefore, Dream House is in breach of its obligations under the Purchase Agreement.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract – Damages for Failure to Repurchase Early Payment Default Loans)

20. Terwin repeats and realleges the allegations of paragraphs 1 - 19, above, as if fully set forth herein.

21. The Mortgage Loans that are the subject of this action are set forth on Exhibit A.

22. Dream House's failure to repurchase the Early Payment Default Loans listed on Exhibit A hereto, was and is a breach of the Purchase Agreement.

23. Terwin is entitled, by means of an award of damages, to be put in the same position economically that it would have been in had Dream House performed its repurchase obligations under the Purchase Agreement.

24. The aggregate realized losses suffered by Terwin for the Early Payment Default Loans, with interest through May 31, 2007, was not less than $507,669, no part of which has been paid despite demand therefor.

25. The aggregate Repurchase Price due and owing to Terwin for the remaining Early Payment Default Loans, as to which no loss has been realized as of May 31, 2007, was $2,392,676, no part of which has been paid despite demand therefor.

26. Absent Dream House's repurchase of the Early Payment Default Loans from Terwin, Terwin's damages will continually increase due to the accrual of interest on outstanding Early Payment Default Loan balances at the related Mortgage Interest Rate (as defined in the Purchase Agreement), and the expenses of owning and servicing Mortgage Loans.

27. By reason of this breach of contract, Dream House is liable to Terwin in an amount to be determined but not less than $2,900,345, plus interest at the statutory rate of 9% from the date(s) of breach until the date of judgment. Terwin hereby tenders to Dream House the Mortgage Loans as to which a loss has not yet been realized, as set forth on Exhibit A, in return for payment of the Full Repurchase Price. Alternatively, Terwin demands judgment for its damages suffered with respect to each and every Mortgage Loan on Exhibit A not repurchased by Dream House.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Indemnification – Legal Fees and Related Costs)

28.     Terwin repeats and realleges the allegations of paragraphs 1 – 27, above, as if fully set forth herein.

29.     Pursuant to § 8.01 of the Purchase Agreement, Dream House expressly and unambiguously agreed to indemnify Terwin and hold Terwin harmless "against any and all . . . losses, damages, . . . legal fees and related costs . . . and any other costs, fees and expenses that the Purchaser [Terwin] may sustain in any way related to (i) the failure of the Seller [Dream House] to observe and perform its duties, obligations, and covenants in strict compliance with the terms of this Agreement . . . ."

30.     Pursuant to § 8.01 of the Purchase Agreement, Dream House's indemnity obligation expressly includes the legal fees and court costs, and all other costs, fees and expenses, that Terwin has incurred, is incurring and will incur in connection with Dream House's failure to observe and perform its obligation to repurchase Early Payment Default Loans as set forth above, including but not limited to all attorneys' fees, court costs and other expenses incurred in this action.

31.     Pursuant to § 8.01 of the Purchase Agreement, Dream House is liable to Terwin for all of Terwin's legal fees and related costs, and all other costs, fees and expenses that Terwin has incurred, is incurring and will incur in connection with Dream House's failure to observe and perform its obligation to repurchase Early Payment Default Loans pursuant to the Purchase Agreement, including but not limited to all attorneys' fees, court costs and other expenses incurred in this action, plus interest at the applicable statutory rate in New York of 9% per annum from the date each such damage or cost was incurred to the date of judgment in this action.

## AS AND FOR A THIRD CAUSE OF ACTION
(Against Ponte for Breach of Fiduciary Duty to Creditor
as Officer and Director of Insolvent Corporation)

32. Terwin repeats and realleges the allegations of paragraphs 1 – 31, above, as if fully set forth herein.

33. On information and belief, at all relevant times Ponte was an officer and/or director of Dream House.

34. On information and belief, at some time in or about April 2006, Dream House became insolvent, in that its liabilities, including its contingent liabilities by reason of its repurchase obligations as to Mortgage Loans, exceeded its assets. From that point forward, Dream House sold Mortgage Loans to Terwin knowing that Dream House was unable to perform its repurchase obligations to Terwin.

35. During the time of Dream House's insolvency, under both Rhode Island and New York law, Ponte, as an officer and director of Dream House, owed a fiduciary duty to Terwin as creditors of an insolvent corporation.

36. Ponte breached his fiduciary duty to Terwin by causing Dream House to sell Mortgage Loans to Terwin, knowing that Dream House was insolvent and unable to perform its repurchase obligations under the Purchase Agreement with respect to those Mortgage Loans.

37. As a result of Ponte's breach of fiduciary duty, Terwin has been damaged and will be damaged in an amount unknown to Terwin at present. The damages arise from Ponte causing Dream House to sell Mortgage Loans to Terwin knowing that Dream House was insolvent and unable to perform its repurchase obligations under the Purchase Agreement with respect to those Mortgage Loans; those Mortgage Loans going into default and being subject to repurchase by Dream House; Dream House failing and

refusing to honor its repurchase obligations; and, on information and belief, the possible inability of Terwin to recover on any money judgment against Dream House because Ponte's course of conduct had the effect of diverting (including to Ponte), dissipating or unduly risking the corporate assets of Dream House.

38. Judgment in favor of Terwin and against Ponte individually for his fraud upon Terwin should be entered in the aggregate dollar amount of all money damages to be awarded to Terwin as against Dream House in this action.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Against Ponte for Common Law Fraud)

39. Terwin repeats and realleges the allegations of paragraphs 1 – 38, above, as if fully set forth herein.

40. Dream House's insolvency was a material fact that was not disclosed to Terwin. The omission of disclosure of this material fact, in connection with Dream House's sale to Terwin of Mortgage Loans subject to repurchase obligations that Dream House could not perform, was a fraud upon Terwin. The management of Dream House, including Ponte, deliberately concealed Dream House's insolvency from Terwin while aware that Terwin would have declined to purchase additional Mortgage Loans had Terwin been aware of such insolvency.

41. Ponte knowingly consented to and approved these unlawful acts.

42. As a result, Ponte is individually liable for fraud upon Terwin.

43. Terwin suffered and is suffering damages as set forth above, as a direct result of the fraud in which Ponte knowingly participated.

44. Judgment in favor of Terwin and against Ponte individually for his fraud upon Terwin should be entered in the aggregate dollar amount of all money damages awarded to Terwin as against Dream House in this action.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Against Ponte; Piercing the Corporate Veil)

45. Terwin repeats and realleges the allegations of paragraphs 1 – 44, above, as if fully set forth herein.

46. Dream House's sales of a huge volume of Mortgage Loans to Terwin and, upon information and belief, other purchasers, all subject to repurchase obligations such as those in the Purchase Agreement, left Dream House drastically undercapitalized to conduct the business it was conducting.

47. On information and belief, Ponte not only was well aware of the drastic undercapitalization of Dream House but was responsible for it.

48. The use of a drastically undercapitalized corporation to conduct business, knowing that creditors foreseeably will be left unpaid when the corporation is unable to perform its obligations, is a wrong justifying piercing the corporate veil, that is, imposing Dream House's liabilities on its shareholders.

49. Under the doctrine of piercing the corporate veil, a money judgment should be entered in favor of Terwin and against Ponte in the aggregate dollar amount of all money damages awarded to Terwin as against Dream House in this action.

WHEREFORE, Terwin demands judgment in its favor and against Dream House as follows:

(i) on its First Cause of Action, awarding Terwin as against Dream House an amount to be determined but not less than $2,900,345,

plus interest at the statutory rate of 9% from the date(s) of breach until the date of judgment, in return for which payment Terwin tenders the Mortgage Loans on Exhibit A as to which no loss has been realized, or, alternatively, Terwin's damages incurred as to each such Mortgage Loan as a result of Dream House's failure to repurchase it;

(ii) on its Second Cause of Action, awarding Terwin all Terwin's legal fees and related costs, and all other costs, fees and expenses that Terwin has incurred, is incurring and will incur in connection with Dream House's failure to observe and perform its obligation to repurchase Mortgage Loans pursuant to the Purchase Agreement, including but not limited to all attorneys' fees, court costs and other expenses incurred in this action, plus interest at the applicable statutory rate in New York of 9% per annum from the date each such damage or cost was incurred to the date of judgment in this action;

(iii) on its Third Cause of Action, in favor of Terwin and against Ponte individually for his breach of fiduciary duty, in the aggregate dollar amount of all money damages awarded to Terwin in this action as against Dream House;

(iv) on its Fourth Cause of Action, in favor of Terwin and against Ponte individually for his fraud upon Terwin, in the aggregate

dollar amount of all money damages awarded to Terwin in this action as against Dream House;

(v)  on its Fifth Cause of Action, in favor of Terwin and against Ponte individually, in the aggregate dollar amount of all money damages awarded to Terwin in this action as against Dream House; and

(vi)  granting such other or further relief as the Court may deem just and proper in the circumstances.

Dated: June 6, 2007

MILLER & WRUBEL P.C.

By: _____
Charles R. Jacob III (CJ-4143)
250 Park Avenue
New York, New York 10177
(212) 336-3500

Attorneys for Plaintiff
Terwin Advisors LLC

**Exhibit A**

| | Exhibit A | | | |
| --- | --- | --- | --- | --- |
| | | 5/31/2007 | | |
| TWG# | last name | lien | realized loss | repurchase total |
| 100052005 | Scanland Jr | 1 | $ 57,820 | cannot repurchase, realized loss |
| 100043035 | WILSON | 2 | $ 50,355 | cannot repurchase, realized loss |
| 100043034 | WILSON | 1 | $ 53,116 | cannot repurchase, realized loss |
| 100046148 | REBELLO | 2 | $ 40,834 | cannot repurchase, realized loss |
| 100050747 | BLACKBURN | 2 | $ 34,307 | cannot repurchase, realized loss |
| 100051991 | Scanland Jr | 2 | $ 18,615 | cannot repurchase, realized loss |
| 100044938 | PINKHAM | 1 | $ 16,054 | cannot repurchase, realized loss |
| 100051988 | Scanland Jr | 1 | $ 57,820 | cannot repurchase, realized loss |
| 100052483 | Flanders | 1 | $ 31,002 | cannot repurchase, realized loss |
| 100017627 | KOKSVIK | 2 | $ 14,620 | cannot repurchase, realized loss |
| 100023702 | WHALEY | 2 | $ 29,123 | cannot repurchase, realized loss |
| 100044471 | HOFFMAN | 2 | $ 104,003 | cannot repurchase, realized loss |
| 100052006 | Scanland Jr | 2 | | $ 27,205 |
| 100071640 | Hernandez | 2 | | $ 70,283 |
| 100038829 | NAGLE | 2 | | $ 63,805 |
| 100050835 | PANNOZZO | 1 | | $ 537,063 |
| 100045861 | ROMERO | 1 | | $ 170,210 |
| 100055260 | Cuffey | 2 | | $ 59,378 |
| 100014760 | IOVINE | 1 | | $ 495,412 |
| 100050869 | Parrella | 1 | | $ 317,548 |
| 100042894 | WHITE | 2 | | $ 206,878 |
| 100037847 | RECOTTA | 2 | | $ 46,161 |
| 100043232 | DIAZ | 1 | | $ 147,154 |
| 100052485 | Flanders | 2 | | $ 121,284 |
| 100045862 | ROMERO | 2 | | $ 42,007 |
| 100017626 | KOKSVIK | 1 | | $ 88,288 |

| | |
|---|---|
| ORIGINAL-WHITE | DUPLICATE-YELLOW  /  TRIPLICATE-PINK |

**RECEIPT FOR PAYMENT**
**UNITED STATES DISTRICT COURT**
for the
**SOUTHERN DISTRICT OF NEW YORK**

E 617458

RECEIVED FROM _Miller & Wrubel_ at _07cv4831 (TPG)_

| Fund | | |
|---|---|---|
| 6855XX | Deposit Funds | |
| 604700 | Registry Funds | |
| | General and Special Funds | |
| 508800 | Immigration Fees | |
| 085000 | Attorney Admission Fees | INVOICE #1715 |
| 086900 | Filing Fees | DATE\TIME: 6/6/2007 4:40:08 PM |
| 322340 | Sale of Publications | CASHIER: Marc #10 |
| 322350 | Copy Fees | STATION: 01 |
| 322360 | Miscellaneous Fees | |
| 143500 | Interest | |
| 322380 | Recoveries of Court Costs | COMPLAINT 4/06       $350.00 |
| 322386 | Restitution to U.S. Government | 086900  $60. |
| 121000 | Conscience Fund | 510000  $190.00 |
| 129900 | Gifts | 086400  $100 |
| 504100 | Crime Victims Fund | |
| 613300 | Unclaimed Monies | GRAND TOTAL       $350.00 |
| 510000 | Civil Filing Fee (½) | |
| 510100 | Registry Fee | Check Amount    $350.00 |

| | Cash | Check | M.O. | Credit |
|---|---|---|---|---|

Checks and drafts are accepted subject to collection and full credit will only be given when the check or draft has been accepted by the financial institution on which it was drawn.

DATE: _____ 20____    DEPUTY CLERK: _MQ_

Index No.:
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TERWIN ADVISORS LLC,

        Plaintiff,

 -against-

DREAM HOUSE MORTGAGE
CORPORATION and JOHN PONTE,

        Defendants.

---

## COMPLAINT

---

MILLER & WRUBEL P. C.
250 PARK AVENUE
NEW YORK, NEW YORK 10177-0699
(212) 336-3500

**Attorneys for**
Plaintiff